IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MARGARET TAPLEY,                        Case No. 3:19-cv-01543-HZ

         Plaintiff,                            OPINION & ORDER

     v.

CRACKER BARREL OLD COUNTRY
STORE, INC.,

         Defendant.

Michael O. Stevens
Stevens & Legal, LLC
3699 NE John Olsen Avenue
Hillsboro, OR 97124

     Attorney for Plaintiff

Shane P. Swilley
Amber A. Beyer
Cosgrave Vergeer Kester LLP
900 SW Fifth Avenue, 24th Floor
Portland, OR 97204

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Margaret Tapley brings this sex discrimination and whistleblower retaliation action against her former employer, Defendant Cracker Barrel Old Country Stores, Inc. Defendant now moves to compel arbitration pursuant to an alternative dispute resolution agreement that Plaintiff signed as a condition of her employment. For the following reasons, the Court grants Defendant's Motion to Compel Arbitration.

## BACKGROUND

Defendant hired Plaintiff on January 31, 2018. Roberts Decl. ¶ 3, ECF 7. As a condition of her employment, Plaintiff signed the "Cracker Barrel Alternative Dispute Resolution Agreement" ("Agreement"). *Id.* at ¶ 4. The Agreement mandates that covered disputes, including claims of harassment, retaliation, and termination, be arbitrated:

> Without limitation, Cracker Barrel and I agree that **any legal dispute arising out of or related to my employment (including those related to my application for employment, my employment or the termination of my employment) must be resolved using informal conciliation and final and binding arbitration and not by a court or jury trial**. Such legal claims may include, but are not limited to, disputes concerning wage and hour law, compensation, leave, **harassment, discrimination, retaliation,** breaks or rest periods, uniform maintenance, expense reimbursement, training, discipline, termination, defamation, transfer, demotion, promotion and termination. It also includes, but is not limited to, any claims that come about through Title VII of the Civil Rights Act of 1964…and any federal, state or local laws or regulations covering the same or similar matters or any aspect of the employment relationship[.]

Roberts Decl. Ex. 1 at ¶ 1 (emphasis added). "[T]he parties agree[d] that arbitration is the required and exclusive forum for the resolution of all disputes (other than disputes which by statute are not arbitrable) arising out of or in any way related to employment[.]" Roberts Decl. Ex. 1 at ¶ 4. The agreement further states, in bold, just above the signature line: "**I understand that, by entering into this Dispute Resolution Agreement, I am waiving my right to a jury trial**[.]" Roberts Decl. Ex. 1 at 5.

Plaintiff now brings this sex discrimination and whistleblower retaliation action against Defendant. Am. Compl., ECF 4. Plaintiff alleges that during her employment with Defendant, her supervisor made "derogatory and sexually harassing remarks towards Plaintiff, [and] impl[ied] that Plaintiff would receive a promotion in exchange for sexual intercourse." *Id.* at ¶¶ 12–16, 28. Plaintiff reported this conduct to her managers. *Id.* at ¶ 17. Subsequently, Plaintiff experienced "an overall decrease in scheduled hours; removal from previously scheduled shifts; and last-minute schedule changes." *Id.* at ¶ 20. Plaintiff was then terminated on June 8, 2018. Roberts Decl. ¶ 3. Plaintiff alleges these actions constitute unlawful retaliation for reporting harassment. Am. Compl. ¶¶ 32–34. Plaintiff also contends that Defendant is liable for the actions of her supervisor, "which led to a hostile work environment," in violation of state law. *Id.* at ¶¶ 25–30.

## STANDARDS

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2 (2018). Courts may decline to enforce an arbitration agreement if grounds "exist at law or in equity for the revocation of any contract." *Id.* Otherwise, courts must place arbitration agreements upon the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "Courts strongly favor arbitration and broadly construe arbitration clauses." *Sanders v. Concorde Career Colls., Inc.*, 3:16-CV-01974-HZ, 2017 WL 1025670 at *2 (D. Or. Mar 16, 2017) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). "The standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

Under the FAA, when evaluating a motion to compel arbitration, courts should determine: "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the

agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

Section 2 of the FAA allows arbitration agreements to be invalidated by generally applicable contract defenses, such as duress or unconscionability, but not by defenses that only apply to arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Doctor's Assoc. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). When determining the validity of an agreement to arbitrate, the courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

## DISCUSSION

Defendant moves to compel arbitration pursuant to the parties' Agreement. Plaintiff makes four arguments in opposing Defendant's motion. First, Plaintiff argues that the FAA does not apply to this case because Defendant is engaged in interstate commerce. Second, Plaintiff argues that the Agreement is invalid under Oregon law. Third, Plaintiff argues that enforcement of the Agreement is unconscionable. Finally, Plaintiff contends that Defendant has waived its right to arbitrate this dispute. The Court finds Plaintiff's arguments unavailing. Because the Agreement is valid and encompasses the claims at issue here,[1] the Court grants Defendant's motion.

///

///

---

[1] Plaintiff does not argue that her claims for sex discrimination and retaliation under state law are outside the scope of the Agreement. Moreover, the Agreement covers "any legal disputes arising out of or related to [her] employment" and includes "disputes concerning… harassment, discrimination, retaliation" and "any claims that come about through Title VII of the Civil Rights Act of 1964…and any federal, state, or local laws or regulations covering the same or similar matter or any aspect of the employment relationship[.]" Roberts Decl. Ex. 1 at ¶ 1.

I.      **Applicability of the Federal Arbitration Act (FAA)**

Plaintiff first argues that the FAA does not govern the Agreement, citing the exclusion for employees engaged in interstate commerce under § 1 of the FAA. Pl. Resp. 2, ECF 10. Section 1 provides: "[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has held that this clause only exempts contracts of employment for transportation workers. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). The Court has also found that employment contracts are generally covered by the FAA. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Because Plaintiff is not a transportation worker, the Agreement is not exempt from the application of the FAA under § 1.

II.     **Preemption of State Law**

Plaintiff next argues that the Agreement is invalid because Oregon law requires specific language in any employment-related arbitration clause, which this Agreement fails to include. Pl. Resp. 3 (citing Or. Rev. Stat. § ("O.R.S.") 36.620(6)). The Federal Arbitration Act (FAA) provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2007). However, "[c]ourts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Assoc. Inc.,* 517 U.S. at 687. In passing the FAA, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Southland v. Keating*, 465 U.S. 1, 16 (1984). Thus, the FAA preempts Oregon law where Oregon law imposes additional enforceability conditions not applicable to other contracts. *Hermida v. JP Morgan Chase Bank, N.A.*, 3:15-CV-00810-HZ, 2015 WL 6739129, at *3 (D. Or. Nov 3, 2015); *see also Bettencourt v. Brookdale Senior Living Comms., Inc.*, No. 09-CV-1200-

BR, 2010 WL 274331, at *6–7 (finding that the requirements under O.R.S. 36.620(5) are preempted by the FAA).

The Oregon statute Plaintiff cites applies only to arbitration agreements. O.R.S. 36.620 is titled "Validity of Agreement to Arbitrate" and can be found in Oregon's Uniform Arbitration Act in Chapter 36 of the Oregon Revised Statutes. The subsection at issue here requires arbitration agreements to include a specific, bold-faced acknowledgement that the employee has read the arbitration agreement and understands that the agreement requires the employee to arbitrate certain disputes. In sum, the additional conditions imposed by the statute are only applicable to arbitration agreements and are therefore preempted by the FAA.

### III. Validity of the Contract

Pursuant to § 2 of the FAA, arbitration agreements may be invalidated under generally applicable contract defenses, such as duress or unconscionability. *AT&T Mobility LLC*, 563 U.S. at 339. When determining the validity of an agreement to arbitrate the courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi. Inc.*, 514 U.S. at 944. Under Oregon law, "[c]ontract formation requires 'a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.'" *Ken Hood Const. Co. v. Pac. Coast Const., Inc.*, 201 Or. App. 568, 578 (2005) (quoting Restatement (Second) of Contracts § 17(1) (1981)). Neither party has argued that this contract was improperly formed. Rather, Plaintiff seeks to invalidate the contract pursuant to a generally applicable contract defense: unconscionability.

"Unconscionability is a generally applicable contract defense that may render an agreement to arbitrate unenforceable." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) (citing *Shroyer v. New Cingular Wireless Servs. Inc.*, 498 F.3d 976, 981 (9th Cir.

2007)). "[U]nconscionability is a question of law that must be determined based on the facts in existence at the time the contract was made" *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614 (2007). The party asserting unconscionability bears the burden of proof. *Id.* Under Oregon law, unconscionability is comprised of two components: procedural and substantive unconscionability. *Id.* Although both forms are relevant to the analysis, "only substantive unconscionability is absolutely necessary" for a finding of unconscionability. *Chalk*, 560 F.3d at 1093 (quoting *Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 567 (2007)). Here, Plaintiff argues that the Agreement is both procedurally and substantively unconscionable. The Court addresses each in turn.

**a.     Procedural Unconscionability**

Procedural unconscionability concerns the conditions under which the contract was formed. *Vasquez-Lopez*, 210 Or. App. at 566. The analysis of procedural unconscionability has two prongs: oppression and surprise. *Wilson v. Bristol-Myers Squibb Co.*, 3:17-CV-2054-SI, 2018 WL 2187443, at *4 (D. Or. May 11, 2018) (citing *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555 (2014)). "Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice." *Livingston v. Metro. Pediatrics, LLC*, 243 Or. App. 137, 151 (2010) (citing *Vasquez-Lopez*, 210 Or. App. at 566). In assessing the surprise prong, courts evaluate whether terms were hidden from the signee "such as ambiguous contract wording and fine print." *Wilson*, 2018 WL 2187443, at *4 (quoting *Bagley*, 210 Or. App. at 555).

Plaintiff primarily relies on the oppression prong, arguing the Agreement is a contract of adhesion because Plaintiff lacked equal bargaining power. But without a showing of deception or compulsion, Plaintiff's contention is insufficient to establish procedural unconscionability. *See*

*Motsinger*, 211 Or. App. at 615–16 (holding that procedural unconscionability was not established because the plaintiff failed to show "that the arbitration clause was the product of deception or compulsion"). Oregon courts have consistently held that "more than a contract of adhesion and unequal bargaining power is required to void an arbitration [agreement]." *Siggelkow v. Nw. Grp., Inc.*, 3:18-CV-01494-HZ, 2019 WL 294759, at *7 (D. Or. Jan 22, 2019) (quoting *Fuqua v. Kenan Advantage Grp., Inc.*, No. 3:11-cv-01463-ST, 2012 WL 2861613, at *10 (D. Or. April 13, 2012)).

Plaintiff also argues surprise, claiming that the failure to include the required elements of O.R.S. 36.620(6) amounts to hiding terms. But, as explained above, the FAA preempts Oregon's statutory requirement, and failure to include a term that is not required cannot constitute "surprise." *See Siggelkow*, 2019 WL 294759, at *8 (describing surprise as "involv[ing] whether terms [a]re hidden or obscure such as being fine print"). Furthermore, the Agreement at issue here is unambiguous and bears Plaintiff's signature. Robert Decl. Ex. 1 at 5. The Agreement clearly states the arbitration mandate and explains that the signee is waiving their right to a jury trial, and a person is generally presumed to be familiar with the contents of any document they've signed. *Id.; Motsinger*, 211 Or. App. at 616–17, (quoting *First Interstate Bank of Or., N.A. v. Wilkerson*, 128 Or. App. 328, 337 n.11 (1994). Plaintiff fails to demonstrate additional evidence of surprise, deception, or compulsion, which Oregon law requires. Thus, Plaintiff has not established that the Agreement is procedurally unconscionable.

b.  **Substantive Unconscionability**

"Under Oregon law 'the emphasis is clearly on substantive unconscionability.'" *Bettencourt*, 2010 WL 274331, at *10 (quoting *Vasquez-Lopez*, 210 Or. App. at 569). Substantive unconscionability concerns the terms of the contract and whether they conflict with

public interest or policy. *Siggelkow*, 2019 WL 294759, at *7 (citing *Wilson*, 2018 WL 2187443, at *4). "The Court determines substantive unconscionability by examining the disparity in bargaining power between parties 'combined with terms that are unreasonably favorable to the party with the greater power.'" *Hermida*, 2015 WL 6739129, at *4 (quoting *Chalk*, 560 F.3d at 1094). In deciding whether substantive unconscionability exists, courts look to arbitration agreement terms such as "one-sided discovery, one-sided coverage, and the allocation of payment of the arbitration fees." *Id.*

In this case, Plaintiff contends that the claim coverage provisions and limitations on discovery, including the lack of initial disclosures, limitations on depositions, and Defendant's superior position for obtaining evidence, make the Agreement unreasonably favorable to Defendant.[2] However, these terms do not meet the threshold for establishing substantive unconscionability.

For example, in *Hermida*, the plaintiff filed a wrongful discharge claim based on retaliation, and the defendant moved to compel arbitration pursuant to an employment contract that mandated arbitration for covered claims. *Id.* at *1. In opposing the motion, the plaintiff alleged specific terms of the contract were substantively unconscionable because they were unfairly weighted in favor of the defendant. *See id.* at *4. First, the plaintiff pointed to a clause limiting the parties to three non-expert depositions. *Id.* In finding that this clause was not substantively unconscionable, the court emphasized that the discovery limitation did not necessarily prevent the plaintiff from exercising his rights because they were guidelines, not requirements, and the contract gave the arbitrator the authority to expand or restrict discovery

---

[2] Plaintiff also argues the Agreement is substantively unconscionable because the terms contradict Oregon arbitration law. As explained above, the FAA preempts state law and policy on this issue.

under the agreement. *Id.*; *see also Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 787 (9th Cir. 2002) (holding that, standing alone, discovery provisions that limit the subject matter of corporate depositions and restrict each side to a maximum of three depositions were not unconscionable).

Second, the plaintiff argued that the claim coverage in the contract was one-sided and unfairly favored the defendant. *Id.* at *5. The contract stated, in part, that claims subject to arbitration included "all claims that [employee] may have against JP Morgan Chase…which arise out of or relate to my employment or separation from JP Morgan Chase and all legally protected employment-related claims that JP Morgan Chase has or in the future may have against me[.]" *Id.* at *1. The contract also compelled arbitration for an extensive list of claims that the defendant might bring against its employee. *Id.* at *5. Relying on these terms, the court reasoned that the agreement was not one-sided because the parties mutually agreed to arbitrate certain claims. *Id.* The court therefore concluded that the terms of the contract were not substantively unconscionable. *Id.*

Similarly, the discovery limitations and claim coverage provisions in this Agreement are not substantively unconscionable. Like in *Hermida*, this Agreement limits both parties to three depositions but still grants the arbitrator discretion to extend discovery for good cause: "[c]onsistent with the expedited nature of arbitration and upon good cause shown, the arbitrator shall have the authority to limit the above discovery or order additional discovery." Roberts Decl. Ex. 1 at ¶ 9. As Plaintiff notes, the Agreement also fails to provide for initial disclosures. *see id.*; Pl. Resp. 6. But the Supreme Court has held that that discovery may be limited in the arbitral forum: "Although [arbitration] procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the

courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer*, 500 U.S. at 31 (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628). Because the discovery limitations apply to both parties and can be modified for good cause, these terms are not unconscionable.

The claim coverage terms also do not unreasonably favor Defendant. As in *Hermida*, the coverage restrictions in this Agreement apply to both parties:

> I agree to use informal conciliation and confidential binding arbitration, instead of going to court, for dispute resolution of any civil or equitable claims of any nature, including claims now in existence of that may exist in the future: (a) that I may have against Cracker Barrel, its affiliates, and/or their current or former employees; or (b) that Cracker Barrel and/or its affiliates may have against me.

Roberts Decl. Ex. 1 at 1; *see also id.* at ¶ 1 (Covered disputes also "includes claims Cracker Barrel may have against [Plaintiff]."). Because both parties have agreed to arbitrate claims against one another, this Agreement is adequately balanced. Thus, Plaintiff has failed to show that the terms of the Agreement are substantively unconscionable.

## IV. Waiver

Finally, Plaintiff argues that by failing to timely provide Plaintiff's personnel records, Defendant waived its right to arbitration. "A determination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). The party arguing waiver bears a heavy burden of proof and must establish: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.*

Here, Plaintiff has not demonstrated that Defendant waived its right to arbitration. As to the first factor, neither party disputes that Defendant had knowledge of its right to compel arbitration.

As to the second, Plaintiff has not shown that Defendant has acted inconsistently with its right to compel arbitration. "[T]he Ninth Circuit has explained that acts inconsistent with the right to arbitrate are found 'when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court.'" *Siggelkow*, 2019 WL 294759, at *5 (quoting *Martin*, 829 F.3d at 1125). For example, a party may waive its right to arbitrate where the parties begin to conduct discovery or engage in other motions practice prior to filing a motion to compel arbitration. *Compare id.* at *6 (finding no waiver when the defendant "fil[ed] a counter claim and s[ought] a jury trial on that counter claim" and all but one of the defendant's motions "were filed simultaneously with the motion to compel arbitration"), *with Martin*, 829 F.3d at 1124 (finding waiver when the parties litigated the case for seventeen months, including conducting discovery, a deposition, and moving to dismiss), *and Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. App'x 663, 664 (9th Cir. 2014) (finding waiver when the parties "conducted discovery and litigated motions, including a preliminary injunction and a motion to dismiss").

In this case, Plaintiff filed her complaint on September 25, 2019. Defendant responded by moving to compel arbitration on October 31, 2019. Defendant has filed no other documents with this Court other than those pertaining to the motion to compel arbitration. Defendant's pre-litigation delay in sending Plaintiff her personnel file does not constitute conduct inconsistent with Defendant's right to compel arbitration. Thus, Plaintiff has failed to show that Defendant acted inconsistently with its right to compel arbitration. The Court need not assess the third element because Plaintiff fails to meet her burden to establish Defendant's waiver by failing on any one of the three factors.

///

## CONCLUSION

The Court GRANTS Defendant's Motion to Compel Arbitration [5]. The parties will contact the courtroom deputy within three days of this Opinion & Order to schedule a telephone status conference to discuss whether to dismiss or stay this case pending arbitration.

IT IS SO ORDERED.

Dated \_\_\_\_March 25, 2020\_\_\_\_

_____*/s/ Marco Hernández*_____
MARCO A. HERNÁNDEZ
United States District Judge

13- OPINION & ORDER